1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

7
8
9
10

| John Henry Gonzales,<br>Petitioner<br>-vs-<br>Edward Bartos, et al.,<br>Respondent(s) | CV-06-2558-PHX-EHC (JI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

11

## I. MATTER UNDER CONSIDERATION

12
13
14
15
16
17
18

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 26, 2006 (#1), and supplemented the record on November 6, 2006 (#5), December 22, 2006 (#16) and on March 9, 2007 (#32).  On February 15, 2007 Respondents filed their Answer (#30), and supplemented it on March 17, 2008 (#54 and 55).   Petitioner filed a reply on March 19, 2007 (#33) and supplemented it on March 26, 2007 (#34), May 11, 2007 (#42), April 7, 2008 (#61) and July 14, 2008 (#62).

19
20
21
22

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

23
24
25

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. PROCEEDINGS AT TRIAL

26

**Trial Proceedings** - On March 10, 1999, Petitioner was indicted on two counts of

27
28

1   molestation of a child.  (Exhibit B, Indictment.)[1]  Petitioner eventually entered into a written

2   Plea Agreement (Exhibit C), and pled guilty to two counts of attempted child molestation.

3   Sentence was suspended and Petitioner was placed on lifetime probation on both counts, and

4   ordered to serve 12 months jail time as a condition of probation on one of the counts.

5   (Exhibit D, Order 11/30/99.)

6   **Probation Revocation** - On September 27, 2004, a Petition to Revoke Probation was

7   submitted, alleging that Petitioner had failed to report to the probation office, failed to obtain

8   approval to relocate, failed to abide by the sex offender special conditions of probation, etc.

9   (Supplement #5 at 35, Exhibits, Petition 11/17/04.)  Petitioner was apprehended, and

10  appeared with counsel on October 7, 2004 for a revocation hearing.  Counsel cross-examined

11  Erick Marmont, the probation officer who appeared on behalf of the prosecution, and

12  questioned him about the failure of Petitioner's assigned probation officer, Dora Gomez, to

13  appear and about contacts between Petitioner and Gomez. (Exhibit E, R.T. 10/7/04 at 10-15.)

14  The probation officer testified on the basis of the probation department's file that Petitioner

15  had failed to report after October, 2003.  (*Id.* at 20.)  The trial court found that Petitioner

16  violated the conditions of probation by failing to report.  (*Id.* at 38.)

17  Petitioner appeared for sentencing on November 5, 2004, and was sentenced to a

18  mitigated term of eight years on count one, and reinstated on lifetime probation as to count

19  two.  (Exhibit #, R.T. 11/5/04 at 71-72.)

20

21  **B. PROCEEDINGS ON DIRECT APPEAL**

22  Petitioner filed a direct appeal challenging the revocation of his probation, and

23  counsel filed an Opening Brief (Exhibit F) pursuant to *Anders v. California*, and related state

24  authorities, asserting an inability to divine a basis for appeal, but noting that Petitioner

25  wished to raise the following issues:

26  1.   Defense counsel was ineffective because he failed to present

27  _____

28  [1] Exhibits to the Answer (#30) and Supplemental Answer (#54) are referenced herein
    as "Exhibit ___."  Corrected Exhibits H and L are attached to the Notice of Refiling (#55).

- 2 -

evidence that the defendant was on Interstate Compact in California for five years.

2. Defendant's Federal Constitutional rights were violated.
3. The judge illegally changed the charges on November 5, 2004.
4. *Blakely v. Washington* was violated.
5. Laws were illegally applied retroactively to defendant.
6. Defendant's probation should not have been violated because he committed no new crime.
7. The basis for the probation violation was a clerical error of the probation officer.
8. Double Jeopardy was violated when the defendant's probation was revoked.
9. Insufficient evidence was presented to prove the probation violation.
10. The constitutional right to confront Dora Gomez was violated.
11. The right to a fair hearing was violated.
12. Unreliable hearsay was improperly admitted.

(Exhibit F at 5-6.)

Petitioner filed a Supplemental Brief *in propria persona* (Exhibit G), arguing that: (1) the states' witness at the revocation hearing  (probation officer Eric Marmont) was not his probation officer;  (2) Marmont testified to unreliable hearsay concerning Petitioner's residence; (3) Marmont had a meeting with Petitioner without notifying defense counsel; (4) Petitioner's probation officer, Gomez, did not testify; and (5) not all documents from the probation department were disclosed.  (Exhibit G at 6-7.)   Petitioner also argued that his appellate counsel was a member of the same public defender firm as revocation counsel, and thus had a conflict of interest, and had failed to provide Petitioner with copies of the record and rules.  (*Id.* at 9.) Petitioner further argued that the Court of Appeals had failed to respond to his request for records.  (*Id.*)

According to the Arizona Court of Appeals, Petitioner also argued that "the probation office acted with malice, falsified documents, and is manipulating state and federal laws." (Exhibit H, Mem. Dec. 5/10/05 at 4.)   These arguments, as well as his claims that the probation officer was unreliable, were found to be unsupported.  (*Id.* at 4-5.)  The appellate court summarily rejected the remainder of Petitioner's claims, including those noted by counsel.

Petitioner did not seek further review.  (Exhibit I, Order & Mandate 6/28/05.)

## C.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF

On January 25, 2005, during the pendency of his direct appeal, Petitioner filed a *pro per* Notice of Post-Conviction Relief (Exhibit J).  Counsel moved to dismiss the proceeding without prejudice, in light of the then pending direct appeal.  (Exhibit K.)  That motion was granted, and the proceeding was dismissed.  (Exhibit L, M.E. 4/26/05.)

## D.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF

**Before PCR Court** - After conclusion of his direct appeal, Petitioner filed a Notice of Post Conviction Relief dated July 7, 2005 (Exhibit M).  Counsel was appointed (Exhibit N, M.E. 7/15/05), who filed a Notice of Completion of Post Conviction Review (Exhibit O), asserting an inability to find an issue for review.  The trial court ordered counsel to remain in an advisory capacity, and gave Petitioner 45 days to file a *Pro Per* Petition.  (Exhibit P, M.E. 8/29/5.)

Petitioner filed his *Pro Per* Supplement to Petition (Exhibit Q), arguing that:

(1)   the plea agreement stipulated to a one year jail term, and his sentence was a violation of that agreement;

(2)   the probation officer made false allegations, and mailed them to Petitioner at a wrong address, depriving Petitioner of his Sixth Amendment and Fourteenth Amendment rights to notice and an opportunity to be heard;

(3)   probation officer Gomez' failure to appear at his revocation hearing deprived Petitioner of his Sixth Amendment right of confrontation, as well his state constitutional rights of confrontation;

(4)   probation officer Marmont's interview of Petitioner after his arrest, and after appointment of counsel, was a violation of his Sixth Amendment right to counsel; and

(5)   probation officer Marmont's failure to disclose documentation in the probation file was a violation of his Fifth and Fourteenth Amendment rights to due process, and his federal rights to disclosure of exculpating evidence.

1    The state responded (Exhibit R), arguing that Petitioner's claims were precluded by

2    his failure to raise them on direct appeal. Petitioner filed a reply, entitled "Motion: Form,

3    Content and Right of Reply."[2]

4    The PCR court summarily dismissed the petition, finding that the claims raised by

5    Petitioner were "identical to those claims raised by the Defendant in his direct appeal."[3]

6    (Exhibit T, M.E. 12/8/5.) Thus, the court determined that the claims had "been previously

7    litigated and therefore are precluded." (*Id.*)

8    **On Petition for Review** - On April 3, 2006, Petitioner filed a Petition for Review

9    with the Arizona Court of Appeals (Exhibit U1), arguing Petitioner was denied his right of

10   confrontation when probation officer Gomez refused to appear at the revocation hearing.[4]

11   That Petition was dismissed as untimely. (Exhibit V, Order 4/19/06.)[5]

12   Petitioner then sought review by the Arizona Supreme Court (Exhibit W), which was

13   summarily denied on October 12, 2006 (Exhibit X).

14   //

15   //

16   //

17   _____

18   [2] The PCR Court's minute order (Exhibit T) identified the reply as having been
     labeled as "Defendant's Pro Per Supplement to Petition for Post-Conviction Relief." This
19   appears to be a misnomer by the PCR court. That court's docket reflects that the only filing
     by Petitioner between the response to the petition and the order dismissing it was a motion
20   identified as "Form, Content and Right of Reply." (Exhibit EE.)

21   [3] The record offers no explanation why the PCR court found that the claims were
     previously argued on direct appeal when the state was arguing that they were precluded
22   because they had not been raised on direct appeal.

23   [4] Petitioner apparently improperly submitted his petition for review directly to the
24   Arizona Supreme Court, which forwarded it to the Arizona Court of Appeals with a letter
     dated May 2, 2006. (Reply, #33, Exhibit A.)
25

26   [5] On April 20, 2007, the Arizona Court of Appeals entered a second Order denying
     review of this petition. (Petitioner's Supplemental Exhibits #42, Order in CA-CR 06-0307.)
27   That Order was vacated by an Order entered August 24, 2007 (Exhibit GG), which
     acknowledged the April 19, 2006 dismissal order, and found that the April 20, 2007 order
28   was entered "inadvertently."

**E.  PROCEEDINGS ON THIRD POST-CONVICTION RELIEF**

**Before PCR Court** - On February 28, 2006 (prior to filing his petition for review on his second PCR petition), Petitioner filed his third Petition for Post Conviction Relief (Exhibit Y).  Petitioner again argued that his confrontation rights were denied, and he was denied his right to counsel when interviewed by the probation officer.

The PCR court summarily dismissed the petition, finding that the petition was untimely, and the claims were precluded because they either were or should have been raised on direct appeal.  (Exhibit Z M.E. 4/11/06.)

Petitioner subsequently filed a Motion to Submit Supplemental (Exhibit AA), which was denied on the basis of the earlier dismissal of the petition (Exhibit BB, M.E. 5/15/6).

**Before Court of Appeals** - Petitioner filed with the Arizona Supreme Court a Petition for Review (Exhibit CC), arguing the issues presented in his third PCR petition.  Although originally submitted to the Arizona Supreme Court, the petition was ultimately filed with the Arizona Court of Appeals. (Exhibit DD, Docket.)  The petition was summarily denied on April 26, 2007 (Exhibit GG; Petitioner's Supplemental Exhibits #42, Order in CA-CR 06-0444.).

**F.  HABEAS CORPUS / CORAM NOBIS PROCEEDINGS**

In ruling on Petitioner's third PCR petition, the PCR court also dismissed a "Motion to Petition for 'Habeas Writ'".  (Exhibit Z, M.E. 4/11/06.)  The parties have not identified such a writ, although Respondents speculate that it was not Petitioner's  "Motion for Writ to Seek Relief Coram Nobis," discussed below,  but some other filing submitted directly to the judge.  (*See* Supplemental Answer, #54 at 2.)

On February 28, 2006, at the time of his third PCR petition, Petitioner filed a "Motion for Writ  to Seek Relief Coram Nobis" (Exhibit FF).  That motion did not set out any specific grounds for relief other than "errors of facts on the face of the record." (*Id.*)  There is no record of a ruling on this motion, unless it is the "Motion to Petition for 'Habeas writ'" referred to by the court in dismissing Petitioner's third PCR petition. (*See* Exhibit Z, M.E.

1  4/11/06.)

2

3  **G.  PRESENT FEDERAL HABEAS PROCEEDINGS**

4      **Petition** - Petitioner instituted the present federal habeas proceeding by filing his

5  Petition for Writ of Habeas Corpus (#1) on October 26, 2006, during the pendency of his

6  petition for review on his third PCR petition.  Petitioner's Petition asserts four grounds for

7  relief:

8      (1)   **Right of Confrontation** - In Ground 1, Petitioner claims that his Sixth

9            Amendment right to confront the witnesses against him was violated when his

10           probation officer did not testify.

11     (2)   **Right to Counsel** - In Ground 2, Petitioner alleges a Sixth Amendment

12           violation because probation officer Marmont contacted Petitioner without

13           notifying Petitioner's attorney or getting permission to speak with Petitioner.

14     (3)   **Failure to Disclose** - In Ground 3, Petitioner alleges that his Fifth Amendment

15           Due Process rights were violated when the Probation Department did not

16           disclose its records.

17     (4)   **Due Process** - In Ground 4, Petitioner alleges that his Fourteenth Amendment

18           rights were violated by the acts alleged in Grounds 1, 2, and 3.

19     **Supplements** - Petitioner filed a Supplement to Petition on October 27, 2006 (#3),

20  providing the final certification page which had been omitted from the original petition.  On

21  November 6, 2006, Petitioner filed a series of exhibits to his Petition (#5).

22     On December 22, 2006, Petitioner filed a Motion to Supplement (#16) which was

23  granted to the extent of allowing Petitioner to supplement the record with the appended

24  records.  (Order 1/16/07, #25.)

25     On March 9, 2007, Petitioner filed a Supplement (#32), appending copies of a

26  transcript page.

27     **Original Answer** - Respondents filed their Answer (#30) on February 15, 2007,

28  arguing that Petitioner failed to exhaust his state remedies, and that his claims are now

1   procedurally defaulted.

2       **Reply** - Petitioner filed a Reply on March 19, 2007 (#33), arguing:

3       (1)    The fair presentation of his claims in his second PCR proceeding is shown by

4               the trial court's ruling that the claims raised by Petitioner were "identical to

5               those claims raised by the Defendant in his direct appeal."  (*See* Exhibit T,

6               M.E. 12/8/5.)

7       (2)    Having presented his claims on direct appeal, he cannot be faulted for being

8               untimely in presenting them to the Arizona Court of Appeals in his PCR

9               proceeding.

10      (3)    Petitioner's untimely filing with the Arizona Court of Appeals was caused by

11              the trial court's delays in forwarding him notice of the denial of his petition.

12      (4)    Petitioner requested that appellate counsel raise his claims, and the failure to

13              do so was ineffective assistance of counsel.

14      (5)    Petitioner's claims are meritorious.

15  Petitioner again filed a motion to supplement on March 26, 2007 (#34), which was granted.

16  (Order 5/23/7, # 45.)   That supplement argues the merits of Petitioner's Confrontation

17  Clause claim.  Petitioner then filed a Motion to Supplement on May 11, 2007, seeking to

18  supplement the record with copies of records relating to Petitioner's petitions for review on

19  his state PCR proceedings.  That motion was also granted.  (Order 9/28/7, #47.)

20      **Supplemental Answer** - On February 14, 2008, the Court noted some discrepancies

21  in the record, and directed Respondents to supplement the record and provided an

22  opportunity for the parties to supplement their briefs.  In response, on March 17, 2008,

23  Respondents filed their Supplemental Answer (#54).   In that Supplemental Answer,

24  Respondents acknowledge that Petitioner's Grounds 1, 2, and 3 were raised in his second

25  PCR petition, and that in finding the claims procedurally barred, the PCR Court had found

26  that the claims had been presented on direct appeal.  Although disagreeing with that

27  conclusion, Respondents acknowledge that the state court's finding is binding, and thus

28  withdraw their claim that these grounds are procedurally barred, and precluded from habeas

1  review.  Respondents maintain their argument that **Ground 4** is procedurally defaulted.

2  Respondents also respond to the merits of Ground 1, 2 and 3.  They argue that
3  **Ground 1** (Right of Confrontation) is without merit because the Sixth Amendment right of
4  confrontation does not apply in probation revocation proceedings, and Petitioner has not
5  based his claim in the Petition upon the conditional right of confrontation under due process.
6  Finally, Respondents argue that such a due process claim would be without merit because
7  the testimony presented against Petitioner was reliable hearsay under an applicable
8  exception.

9  With regard to **Ground 2** (Right to Counsel), Respondents argue that there is no Sixth
10  Amendment right to counsel in probation violation proceedings.  Further, any such right
11  would not have accrued at the time of Petitioner's interview by the probation officer, because
12  revocation proceedings had not yet been commenced.  Finally, any error was harmless
13  because no statements obtained were used at the hearing.

14  With regard to **Ground 3** (Failure to Disclose), Petitioner's claim is without merit
15  because the record reflects that he had access to the disputed computer log, is not entitled to
16  *Brady* disclosure and thus was only entitled to evidence used against him which the logs were
17  not.  Even if *Brady* applied, no violation occurred because the log was ultimately introduced
18  into evidence, was not exculpatory, and was not material and therefore not prejudicial.

19  **Supplemental Reply** - On April 7, 2008, Petitioner filed his Supplemental Reply
20  (#61) (styled as a "Motion for Petitioner to Submit Answer to Respondents Supplemental
21  Request").  With regard to **Ground 1** (Right of Confrontation), Petitioner argues that he had
22  a due process right to confront his probation officer, who would have exonerated Petitioner.
23  He further argues that the hearsay was unreliable because the testifying probation officer had
24  never met the officer who handled Petitioner's case.  As to **Ground 2** (Right to Counsel),
25  Petitioner argues that not only had the proceedings commenced at the time of his interview,
26  but counsel had already been appointed.

27  On July 14, 2008, Petitioner file supplemental exhibits regarding a purported violation
28  of probation in May, 2000, asserting that no such violation was found.

### III. APPLICATION OF LAW TO FACTS

**A.  GROUND 1 (RIGHT OF CONFRONTATION)**

For Ground 1 of his Petition, Petitioner argues that his Sixth Amendment right of confrontation was violated when the probation officer, Dora Gomez, who had been handling Petitioner's case since his transfer to California and who had filed the revocation petition, failed to testify against him, and instead another probation officer, Eric Marmont, testified against him on the basis of Gomez' file.  (Petition, #1 at 5.)

Respondents concede exhaustion of this claim, and argue that Petitioner had no Sixth Amendment right to confrontation in these probation revocation proceedings, and Petitioner has not based his claim in the Petition upon the conditional right of confrontation under due process.  Respondents argue that such a due process claim would be without merit because the testimony presented against Petitioner was reliable hearsay under an applicable exception.  Finally, Respondents assert that any error was harmless.[6]    (Supplemental Answer, #54 at 8-11.)

**Sixth Amendment Right of Confrontation** - By its own terms, the Sixth Amendment applies to "criminal prosecutions."  U.S.Const. Amend. VI.  Revocation procedures are not criminal prosecutions, and thus not subject to the full panoply of rights afforded in such prosecutions.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (parole revocation); *Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973) (probation revocation).  Thus, in *U.S. v. Hall*, 419 F.3d 980 (9th Cir. 2005), the Ninth Circuit held that the purview of the Sixth Amendment did not extend to a revocation of supervised release.   In so doing, they noted that "[p]arole,

---

[6] It is unclear that harmlessness would defeat Petitioner's claim if the Confrontation Clause were found to apply.  Cases analyzing due process in revocation proceedings often refer to the lack of controverting evidence.  *See e.g. U.S. v. Walker,* 117 F.3d 417, 421 (9th Cir. 1997).   However, in applying the Confrontation Clause, the Supreme Court has identified the proper harmlessness inquiry is the change in the outcome had the evidence been properly excluded, taking into account such things as other evidence available to establish the same facts.  *See e.g. Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986).  Here, the only other evidence on Petitioner's failure to report was his testimony that he had reported.  (*See* Exhibit G, R.T. 10/7/04 at 22-25, 33-34.)

1  probation and supervised release revocation hearings are constitutionally indistinguishable

2  and are analyzed in the same manner." *Id.* at 985, n. 4. *See also Gagnon*, 411 U.S. at 782,

3  n. 3 (noting commentators' agreement of no difference, at least "where sentence has been

4  imposed previously").

5          While there might be an argument under *Mempa v. Rhay*, 389 U.S. 128 (1967),

6  discussed *infra*, that the combination of the probation proceeding with the completion of the

7  deferred sentencing subjected Petitioner's proceeding to the protections of the Sixth

8  Amendment. However, *Mempa* dealt only with the right to counsel, and did not extend the

9  full protections of the Sixth Amendment to such proceedings. Consequently, a contrary

10  decision would not be "contrary to, or an unreasonable application of, clearly established

11  Federal law, as determined by the Supreme Court of the United States,"   28 U.S.C.

12  §2254(d)(1), and therefore habeas relief would not be allowed. Moreover, the protections

13  of the Confrontation Clause do not extend to sentencing. Rather, hearsay is admissible at

14  sentencing, so long as it is "accompanied by some minimal indicia of reliability." *U.S. v.*

15  *Littlesun,* 444 F.3d 1196, 1200 (9th Cir. 2006). [7]

16          Thus, Petitioner had no Sixth Amendment right of confrontation in his probation

17  revocation proceedings.[8]

18  _____

19          [7] Moreover, the hearsay testimony was used at Petitioner's revocation proceeding.
20  Varying the rules on admission of evidence at bifurcated revocation and sentencing
    proceedings would not have the same practical difficulties as attempting to vary the right to
21  counsel in such a situation.

22          [8] Respondents devote some energy to arguing the limitations on habeas relief wrought
23  by the AEDPA, *i.e.* that relief can only be granted where a state court's decision was
    "contrary to or an unreasonable application of" Supreme Court law or an "unreasonable
24  determination of the facts." *See* 28 U.S.C. § 2254(d). Here, however, Petitioner's claims are
    deemed exhausted only by the fluke of the trial court's determination that they had been
25  presented on direct appeal. Thus there is no reasoned state court decision for this Court to
    evaluate. In such instances, this habeas court is ordinarily left to evaluating the claims *de*
26  *novo* and then comparing the state court's results. *See Wilson v. Czerniak*, 355 F.3d 1151,
    1154 (9th Cir. 2004). However, here there are no state court determinations of any kind on
27  the merits of the Petitioner's claims, not even a simple denial. Nonetheless, because the
28  undersigned finds the claims to be without merit, there is no need to apply the limitations of

Even if such a right applied, Respondents argue and Petitioner does not refute, that insofar as Petitioner's claim is based solely upon the use of the probation records, that evidence was subject to a hearsay exception.   A non-testimonial hearsay statement is admissible if it falls within a "firmly rooted hearsay exception."  *Idaho v. Wright*, 497 U.S. 805, 816 (1990); *Crawford v. Washington,* 541 U.S. 36, 68 (2004).[9]

Insofar as Petitioner simply complains that Officer Gomez did not testify, Petitioner fails to make out a violation.  "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Beyond the extent to which her records were relied upon by Officer Marmont, Officer Gomez did not testify against Petitioner.  Accordingly, no right of physical confrontation and cross-examination attached.[10]

**No Due Process Claim Properly Raised** - A probationer is not without protections with regard to confrontation.  The Due Process Clause provides "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey*, 408 U.S. at 489.    Respondents argue that Petitioner's Petition did not assert such a claim.  However, as pointed out in his Reply (#33), Petitioner asserted in Ground 4 of the Petition that his due process rights were violated based upon the facts presented in Ground 1.

---

§ 2254(d).

[9]   The undersigned presumes that the probation office records qualify as non-testimonial hearsay.  *See Crawford*, 541 U.S. at 56 (recognizing business records as type of hearsay which is non-testimonial).  *But see U.S. v. Martin*, 984 F.2d 309 (9th Cir. 1993) (finding denial of due process based upon revocation of supervised release in reliance upon written results of urinalysis test without testimony of collecting officer or analyst).

[10]   Perhaps Petitioner conflates a right of confrontation with the Sixth Amendment right of compulsory process.  To the extent that Petitioner had a right to compel Officer Gomez to testify, he offers nothing to show that he in fact attempted to obtain such testimony and was thwarted. The State had no duty to anticipate and call witnesses on Petitioner's behalf.

1    Still, as discussed hereinafter, the due process claims raised in Ground 4 are

2    unexhausted and procedurally defaulted.    Accordingly, this Court cannot, and the

3    undersigned will not, address the merits of a claim based upon a due process right of

4    confrontation.

5

6    **B.  GROUND 2 (RIGHT TO COUNSEL)**

7         In his Ground 2, Petitioner argues that his Sixth Amendment rights were violated

8    because, on September 25, 2004, nine days after his arraignment and appointment of counsel,

9    probation officer Marmont interviewed Petitioner without notifying Petitioner's attorney or

10   getting permission to speak with Petitioner.  (Petition, #1 at 6.)

11        Respondents argue that there is no Sixth Amendment right to counsel in probation

12   violation proceedings.  Further, any such right would not have accrued at the time of

13   Petitioner's interview by the probation officer, because revocation proceedings had not yet

14   been commenced.  Finally, any error was harmless because no statements obtained were used

15   at the hearing.  (Supplemental Answer, #54 at 11-12.)

16        As discussed above in connection with Ground 1, the protections of the Sixth

17   Amendment generally do not extend to Petitioner in his probation revocation proceedings.

18   However, the Sixth Amendment right to counsel extends to all "critical stages" of a criminal

19   prosecution.  In *Mempa v. Rhay*, the Supreme Court "concluded that the imposition of the

20   'deferred' sentence after probation was revoked triggered the Sixth Amendment because

21   sentencing is a 'stage of a criminal proceeding where substantial rights of a criminal accused

22   may be affected.'" *U.S. v. Stocks,* 104 F.3d 308, 311 (9th Cir. 1997) (quoting *Mempa*, 389

23   U.S. 128, 134 (1967)).  Thus, the Court held that "the defendant-probationer had a Sixth

24   Amendment right to counsel at the combined probation revocation and sentencing hearing."[11]

25   _____

26        [11]  Because it does not affect the outcome, the undersigned presumes that *Mempa*
     cannot be distinguished on the basis that Petitioner's actual hearings on the sentencing and
27   revocation were eventually bifurcated and heard on separate dates.    Allowing such a
     distinction could make the existence of a right to counsel depend upon after-the-fact vagaries
28   of court scheduling, and likely render the protections for the later sentencing meaningless.

1   *Id.*  Here, the court had "suspend[ed] imposition of sentence and plac[ed] the Defendant on

2   probation." (Exhibit D, Order 11/30/99.)  Accordingly, Petitioner had a Sixth Amendment

3   right to counsel in  the subsequent combined revocation and sentencing proceedings.

4             Further, contrary to Respondents' assertion, the proceedings had already commenced

5   at the time his probation officer interviewed him in violation of his right to counsel.

6                         Q     [Defense counsel] Does your file reflect the date that you
                    met with Mr.  Gonzales?
7                         A     [Probation Officer Eric Marmont] Yes.
                         Q     What was that date?
8                         A     The date that the new petition was submitted, that would be,
                    September 25th.
9                         Q     You met with him on September 25th?
                         A     Yeah. It was a Tuesday of that week.
10                        Q      And, at that point, this witness violation hearing had
                    already been set, is that correct?
11                        A     No, it had not.
                         Q     No, I think if you check your file, you'll see that it was set
12                   September 16, 2004.
                         A     I was not aware of that.
13                        Q     Okay. Were you aware that Mr. Gonzales was represented
                    by counsel on September 25th?
14                        A     No.
                         Q     Did you notify counsel that you were going to contact his
15                   client?
                         A     No.
16                        Q     I'm sorry?
                         A     No.
17                        Q     Do you see anything wrong with that, Mr. Marmont?
                         A     No.
18
    (Exhibit E, R.T. 10/7/04 at 9.)  Indeed, the record reflects that Petitioner had been arraigned
19
    on September 16, 2004, and was represented by counsel at least from that time. (Suppl. Pet,
20
    #5, Exhibits, M.E. 9/16/04.) It is true that a "person's Sixth and Fourteenth Amendment right
21
    to counsel attaches only at or after the time that adversary judicial proceedings have been
22
    initiated against him," but it is also clear that at the least "the right attaches at the time of
23
    arraignment." *Kirby v. Illinois,* 406 U.S. 682, 688 (1972).
24
                         This Court has held that the right to counsel guaranteed by the Sixth
25                   Amendment applies at the first appearance before a judicial officer at
                    which a defendant is told of the formal accusation against him and
26                   restrictions are imposed on his liberty.

27  *Rothgery v. Gillespie County, Tex.,* - - - S.Ct. - - -,   2008 WL 2484864, 3 (June 23, 2008)

28  (citing *Brewer v. Williams,* 430 U.S. 387, 398-399 (1977); and *Michigan v. Jackson,* 475

- 14 -

1    U.S. 625, 629, n. 3 (1986)).

2        Officer Marmont interviewed petitioner nine days after his arraignment and

3    appointment of counsel, and did so in violation of Petitioner's right to counsel.

4        However, Respondents are correct in noting that claims of denial of counsel are

5    subject to harmless error analysis.  Although, in cases of a complete denial of counsel,

6    harmless error analysis does not apply, where the denial is limited to a discrete portion of the

7    proceeding, the analysis does apply.  *Satterwhite v. Texas,* 486 U.S. 249, 257-258 (1988).

8    Under such analysis, "if the prosecution can prove beyond a reasonable doubt that a

9    constitutional error did not contribute to the verdict, the error is harmless and the verdict may

10   stand." *Id.* at 256.  Here, Respondents argue that the prosecution did not rely upon or offer

11   any statements made by Petitioner during his interview with Officer Marmont.  (Supp. Ans,

12   #54 at 12.)  Petitioner does not respond to this argument, and the undersigned finds nothing

13   in the record to suggest that any information obtained from Petitioner by Officer Marmont

14   was used against Petitioner.  Accordingly, the undersigned finds that Respondents have met

15   their burden of showing beyond a reasonable doubt that the denial of Petitioner's right to

16   counsel by Officer Marmont was harmless.

17       Accordingly, Petitioner's Ground 2, based upon a denial of counsel, is without merit.

18   And, as with Ground 1, any assertion of a due process right to counsel asserted in Ground

19   4 is procedurally defaulted.

20

21   **C.  GROUND 3 (FAILURE TO DISCLOSE)**

22       In Ground 3, Petitioner alleges that his Fifth Amendment Due Process rights were

23   violated when the Probation Department did not disclose records, including: (1) the

24   computerized log of contacts with probationers (Exhibit E, R.T. 10/7/04 at 15); and (2) an

25   interstate agreement and various probation documents, all of which he identifies as being

26   filed with the court.  (Petition, #1 at 7.)

27       Respondents argue that this claim is without merit because the record reflects that

28   Petitioner had access to the disputed computer log and the other documents were public

record, he was not entitled to *Brady* disclosure and thus was only entitled to evidence used against him, which the logs were not. Even if *Brady* applied, no violation occurred because the log was ultimately introduced into evidence, was not exculpatory, and was not material and therefore not prejudicial. (Supp. Ans. #54 at 13-16.)

In his original Reply, Petitioner simply argues that he had a due process right to disclosure. (#33 at 11.) He does not directly address this claim in his Supplemental Reply (#61).

**No Right to *Brady* Disclosure** - In *Brady v. Maryland,* the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83, 87 (1963). However, as noted above, probation revocation proceedings are not criminal prosecutions, and thus are not subject to the strictures of *Brady*. *See Welcoming Brady to Probation Proceedings*, 16 No. 7 Crim. Prac. Rep. 5 (2002) (discussing limited case law on application of *Brady* in probation proceedings but noting Ninth Circuit authorities to the contrary).[12]

**No Violation of Limited Right to Disclsoure under *Morrissey*** - Again, however, a probationer is not without protections. Although the requirement of disclosure of exculpatory evidence in *Brady* does not apply, the Court in *Morrissey* held that due process

---

[12] As with Ground 1 (Confrontation) there might be an argument under *Mempa v. Rhay*, 389 U.S. 128 (1967), discussed *supra*, that the combination of the probation proceeding with the completion of the deferred sentencing subjected Petitioner's proceeding to the protections of the Sixth Amendment. However, *Mempa* dealt only with the right to counsel, and did not extend the full protections applicable in criminal prosecutions to such proceedings. Consequently, a contrary decision would not be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), and therefore habeas relief would not be allowed. However, unlike the right of confrontation, the right of disclosure extends to the sentencing phase, and requires disclosure of evidence "material either to guilt or punishment." *U.S. v. Nagra,* 147 F.3d 875, 881 (9th Cir. 1998). On the other hand, like the right of confrontation, it would be practicable to differentiate between disclosure based on whether the evidence related to the revocation phase or the completion of deferred sentencing phase.

1   required "disclosure to the parolee of evidence against him."   408 U.S. at 489.   Here,

2   however, Petitioner does not complain of a failure to disclose evidence used against him.

3         With regard to the prior probation petitions for modification, the petitions would have

4   been public record, easily accessible to Petitioner through his counsel.   Similarly, the

5   interstate compacts for supervision of probations would have been a matter of public record,

6   and are codified in Arizona by statute.   *See* Ariz. Rev. Stat. § 41-467, *et seq.* (Interstate

7   Compact on Supervision of Adult Offenders).   Accordingly, there was no obligation on the

8   part of the prosecution to disclose those records.   *See U.S. v. Aichele,* 941 F.2d 761, 764 (9th

9   Cir. 1991) (applying *Brady*).

10         The only non-public information introduced at trial was the computer log of phone

11   contacts.   Petitioner argues that the "State did provide as evidence one record of one phone

12   message." (Supp. Reply, #61 at 14.)   However, those records were not introduced by the

13   state  against Petitioner, but by his own counsel.

14                       BY MR. SCANLAN [defense counsel]:

                    Q.    The question is, aren't all contacts of Mr. Gonzales to the

15                 probation department, particularly to Dora Gomez, relevant?

              A.   Yes.

16                 Q.   Do you have the computerized log of all of the contacts with Mr.

              Gonzales with you - -

17                 A.   Yes.

              Q.   - - now on the stand?

18                 A.   Yes.

              Q.   May I see 'em?

19                 Q.   I'm looking at the third entry date March 24 of 2004.  That was

              entered by Dora Gomez, is that correct?

20                 A.    That's correct.

21   (Exhibit E, R.T. 10/7/04 at 17-18.) Like Petitioner, the probationer in *U.S. v. Donaghe*, 924

22   F.2d 940 (9th Cir. 1991), complained that the government had not disclosed portions of its

23   file.   The court concluded:

24             The only use of these records occurred on cross-examination, when

          defense counsel asked questions of the probation officer that required

25             him to refer to these records. We have held that failure to allow a

          probationer to view his probation file prior to a revocation hearing

26             violates neither Fed.R.Crim.P. 32.1(a)(2)(B) nor due process if the

          government does not use it as evidence against the probationer. In this

27             case, such evidence was not used by the government against appellant.

28   *Donaghe,* 924 F.2d at 944 (citations omitted). *See also U.S. v. Guardino*, 972 F.2d 682, 689

1   (6th Cir. 1992) (government required "to disclose such evidence only if it was actually used

2   against the probationer").[13]

3         Petitioner argues in his Reply that his right to a fair trial was violated when the state

4   withheld "evidence that could prove innocence."  (Reply, #33 at 11.)  "Essentially, [the

5   probationer's] argument attempts to equate evidence that might be useful to the defense with

6   evidence that actually was used by the Government in making its case. *Morrissey* requires

7   disclosure of the second category, but not the first."  *U.S. v. Neal*, 512 F.3d 427, 436 (7th Cir.

8   2008).

9         Having failed to point to any evidence used against him by the state which was not

10   disclosed or otherwise available to him, Petitioner's Ground 3 is without merit.

11

12   **D.  GROUND 4 (DUE PROCESS) AND PROCEDURAL DEFAULT**

13         In his Ground 4, Petitioner alleges that his Fourteenth Amendment rights to due

14   process were violated by the acts alleged in Grounds 1, 2, and 3.  (Petition, #1 at 8.)

15   Respondents characterize this as a claim that the errors in Ground 1 through 3 "combined"

16   to deny him due process, and that this "precise" claim was not presented to the state courts,

17   is unexhausted, and procedurally defaulted.  (Answer, #30 at 18.)

18

19   **1.  Nature of Ground 4**

20         Respondents characterize Ground 4 as asserting a claim of cumulative error.  This

21   Court, however, is required to liberally construe Petitioner's *pro se* Petition.  *Zichko v. Idaho*,

22   247 F.3d 1015 (9th Cir. 2001).  With or without such a liberal construction, the undersigned

23   understands Petitioner's Ground 4 to assert 3 separate violations of due process, not a single

24   claim of cumulative error.  Petitioner makes no reference to "cumulative error," and

25

26        [13]  Moreover, counsel had obtained the records by the time of hearing, and made use

27   of them.  Even under *Brady*, disclosure prior to trial is not required, there being no violation
     if disclosure is made at a time when the documents are "still of substantial value at trial."

28   *U.S. v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988).  Petitioner makes no suggestion what
     additional use might have been made from an earlier disclosure.

1  individually lists the "issues" in Grounds 1 through 3 as the source of the due process

2  violation. (Petition, #1 at 8.)   In that regard, the re-assertion of Ground 3 (Failure to

3  Disclose), would be duplicative inasmuch as that claim is already based on due process

4  grounds.[14]

5

6  **2.  Exhaustion, Procedural Default, and Procedural Bar**

7      **Exhaustion** - Generally, a federal court has authority to review a state prisoner's

8  claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S.

9  1, 3 (1981) (*per curiam*); 28 U.S.C. § 2254(b) and (c).   When seeking habeas relief, the

10  burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright*

11  *v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023

12  (1982).

13      Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

14  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

15  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

16  1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

17  petition in federal court.   This is true even where alternative avenues of reviewing

18  constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211

19  (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

20  1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona

21  state prisoners are exhausted for purposes of federal habeas once the Arizona Court of

22  Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir.

23  2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

24      To result in exhaustion, claims must not only be presented in the proper forum, but

25  must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair

26  _____

27      [14]  To the extent that Ground 4 could be read as asserting a claim of cumulative error,
   it would be unexhausted, as Petitioner never asserted a claim of cumulative error to the state
28  courts.

opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (*overruled on other grounds by Robbins v. Carey,* 481 F.3d 1143 (9th cir. 2007)).

**Procedural Default** - Ordinarily, unexhausted claims are dismissed *without prejudice*. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

**Procedural Bar** - Federal habeas review of a federal claim is also precluded for procedurally barred claims, *i.e.* those which have actually been presented to the state court, but were disposed of on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  *But see, Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("assum[ing]" independence standard applies on habeas). "Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." *Bennett v. Mueller*, 322 F.3d 573, 584 (9th Cir.2003).

## 3.  Presentation of Claims

If Petitioner were to have properly presented his state claims, it must have been in his direct appeal.  His first PCR proceedings were voluntarily dismissed at the trial court, his second PCR proceedings were dismissed by the Arizona Court of Appeals on the basis that

1   his Petition for Review was untimely (Exhibit V), and his third PCR proceedings were

2   dismissed as procedurally barred, both under Arizona's timeliness rules, and under its

3   preclusion bar.

4       Petitioner makes no argument that the procedural bars applied in his second and third

5   PCR proceedings are not independent and adequate state grounds.  Accordingly, to the extent

6   that his claims may have been raised in those proceedings, federal review would be

7   precluded. *Harris*, 489 U.S. at 260.

8       **Ground 1** - With regard to Ground 1 (Right of Confrontation), Petitioner never

9   presented this claim as a violation of due process.  In his counsel's Opening Brief on direct

10  appeal, he simply argued that his "constitutional right to confront Dora Gomez was violated."

11  (Exhibit F at 5.)  In his Supplemental Brief, Petitioner simply argued that officer Marmont

12  testified to hearsay which was not reliable, and that officer Gomez did not testify. (Exhibit

13  G at 6.)  No reference to a federal right to due process was made in connection with those

14  claims.

15      In his Petition for Review on his second PCR petition, Petitioner cited only the Sixth

16  Amendment, and the only federal case he cited was *Crawford v. Washington*, 541 U.S. 36,

17  42 (2004), which was squarely based on the "Sixth Amendment's Confrontation Clause."

18  Neither of the state cases he cited discuss a due process right of confrontation.  *See Mannel*

19  *v. Industrial Com'n of Arizona,* 42 Ariz. 153, 155, 688 P.2d 1045, 1047 (App.1984) (no

20  reference to due process or right of confrontation); and *State v. Correll,*148 Ariz. 468, 472,

21  715 P.2d 721, 725 (1986) (applying Sixth Amendment to hearing on competency to stand

22  trial).  (*See* Exhibit U1, Pet. Rev. at 3-4; and Exhibit U2, Supp. Pet. Rev. at 4-6.)

23  Petitioner's only reference to a denial of his right to due process under the 14th Amendment

24  was his argument that the notices of violation were inadeqately addressed, thus depriving him

25  of "adequate notice of accusation."  (Exhibit U2, Supp. Pet. Rev. at 2-3.)

26      Again, when  arguing the confrontation claim to the Arizona Supreme Court,

27  Petitioner relied solely on the Sixth Amendment and related authorities.  (Exhibit W, Pet.

28  Rev. at 3-4.)  Petitioner added citations to two Arizona cases, neither of which discussed

1    federal due process claims.  *See State v. Fleming,* 117 Ariz. 122, 125, 571 P.2d 268, 271

2    (1977) (Sixth Amendment discussed); and *State v. Altman,* 107 Ariz. 93, 95, 482 P.2d 460,

3    462 (1971) (discussing confrontation right under *State v. Narten*, 99 Ariz. 116, 407 P.2d 81

4    (1965), a Sixth Amendment case).

5          In his Petition for Review on his third PCR petition, Petitioner again argued only that

6    the denial of his right of confrontation was a violation of his state and Sixth Amendment

7    rights.  (Exhibit CC Opening Brief at 9.)  He added citations to various additional cases, none

8    of which establish a due process claim based on a right of confrontation.  (*Id.* at 4-5.)  *See*

9    *Mannel v. Industrial Com'n of Arizona,*    142 Ariz. 153, 688 P.2d 1045 (App. 1984)

10   (worker's compensation case);  *State v. Correll,* 148 Ariz. 468, 715 P.2d 721 (1986) (Sixth

11   Amendment confrontation case); and *California v. Green*, 399 U.S. 149 (1970) (same).

12         **Ground 2** - With regard to Ground 2 (Denial of Counsel), Petitioner argued in the

13   factual background of his Supplemental Brief on direct appeal that Officer Marmont had met

14   with him without counsel's permission.  (Exhibit G, Supp. Brief at 5.)  He did not, however,

15   assert that this was a violation of due process or any other constitutional provision.

16         In his *Pro per* Supplement to his First PCR Petition he did explicitly argue the denial

17   of counsel, but argued only that it was a violation of "the United States Constitutional [sic]

18   the 6th Amendment the Right to Assistance of Counsel [and] the Arizona Constitutional

19   Rights Art 2 Sec § [sic] 24 the right to defend by counsel."  (Exhibit Q, Suppl. PCR Pet. at

20   7.)  Petitioner did not, however, assert that the denial of counsel was a due process violation.

21   Moreover, Petitioner did not even repeat his 6th Amendment denial of counsel claim to the

22   Arizona Court of Appeals (*see* Exhibit U1, Petition).  In his Petition for Review on his third

23   PCR petition, Petitioner again argued only that the denial of counsel was a violation of his

24   state and Sixth Amendment rights.  (Exhibit CC Opening Brief at 9.)

25         Accordingly, the undersigned finds that Petitioner never presented to the state courts

26   those portions of the due process claim in Ground 4 founded upon the facts of Grounds 1

27   (Confrontation) and 2 (Counsel).  Accordingly, these claims are unexhausted.

28   //

## 4.  Procedural Default of Unexhausted Claims

Respondents correctly assert that Petitioner's unexhausted claims are now procedurally defaulted.

Remedies by Direct Appeal - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available for Petitioner's unexhausted claims.

Remedies by Post-Conviction Relief - Petitioner can no longer seek review of his due process issues by way of a subsequent PCR Petition.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has also long since passed.

While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.  Nor does it appears that such exceptions in Rule 32.1 would apply to Petitioner.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on

the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Petitioner has asserted no"newly discovered evidence" and therefore paragraph (e) has no application.  Paragraph (f) has no application where the petitioner filed a timely notice of appeal, and the notice of post-conviction relief of-right applies only to petitions filed following a guilty or *nolo contendre* plea.  *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right).  *See also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (on certified question holding that "notice of appeal" in 32.1(f) is direct appeal only, and not appeal from denial of post-conviction relief).  Paragraph (g) has no application because Petitioner  has not asserted a change in the law occurring since his last state PCR petition.  Finally, paragraph (h) has no application because Petitioner's claims do not assert his  actual innocence.  Accordingly, the undersigned must conclude that review through Arizona's post-conviction relief process is no longer possible.[15]


**4.  Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

---

[15]  Moreover, it is likely that Petitioner's claims are barred under Arizona's rules of preclusion.  *See* Ariz.R.Crim.P. 32.2(a).  Because of the limited development of Arizona law on the exception for claims of "sufficient constitutional magnitude," *see Stewart v. Smith,* 536 U.S. 856 (2002), and the applicability of other clear procedural bars, the undersigned does not reach Respondents' argument on the preclusion bar.

1   the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984). Petitioner argues in his Reply that his

2   failure to exhaust should be attributed to the trial court's delays in sending him notice of the

3   denial of his petition; and the ineffective assistance of appellate counsel.[16]

4        Petitioner's argument that his Petition for Review on his second PCR proceeding was

5   delinquent would be compelling, if he had, in fact raised his procedurally defaulted claims

6   in that petition for review.  As discussed above, however, he did not.  Thus, any delay in

7   notice by the trial court cannot be said to have prevented him from presenting his

8   procedurally defaulted claims.

9        Petitioner cannot now assert any ineffective assistance of counsel as cause for a

10  procedural default. Ineffective assistance of counsel may constitute cause for failing to

11  properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149

12  F.3d 923, 932, (9th Cir. 1998).   However, a claim of ineffective assistance of counsel

13  showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier,* 477

14  U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Accordingly, "[t]o the

15  extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the

16  default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a

17  separate claim in state court." *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

18       Petitioner did not assert such a claim of ineffective assistance.  His only attack on

19  appellate counsel was the claim in his Supplemental Brief on direct appeal that appellate

20  counsel had a conflict of interest.  (Exhibit G at 9.)

21       Based upon the foregoing, the undersigned finds no "cause" to excuse Petitioner's

22  procedural default or the effect of the state's procedural bar.

23  / /

24  / /

25

26       [16]  Petitioner also argued in his original Reply that any failure to exhaust as a result
    of his untimely petition for review in his PCR proceedings should be excused because his
27  claims were presented on direct appeal.   To the extent that the Respondents and the
    undersigned have relied upon the PCR court's determination that his claims were raised on
28  direct appeal, Petitioner's argument is moot.

1  **5. Actual Innocence**

2      The standard for "cause and prejudice" is one of discretion intended to be flexible and

3  yielding to exceptional circumstances.  *Hughes v. Idaho State Board of Corrections*, 800

4  F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in

5  an extraordinary case, where a constitutional violation has probably resulted in the conviction

6  of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis

7  added).  It is not sufficient that the petitioner point to some legal insufficiency. *Bousley v.*

8  *United States*, 523 U.S. 614, 623(1998) ("'actual innocence' means factual innocence , not

9  mere legal insufficiency"). Petitioner proffers no such showing of actual innocence.

10

11  **6. Summary re Exhaustion**

12      Petitioner's Ground 4 asserts a denial of due process based upon the facts underlying

13  Grounds 1, 2 and 3.  The portion based on Ground 3 is duplicative of Ground 3 (which is

14  itself based on a denial of due process), and as discussed above is without merit.  The

15  remaining due process claims were not fairly presented to the state courts, are now

16  procedurally defaulted, and Petitioner has failed to show cause to excuse such procedural

17  default.  Accordingly, the balance of Ground 4 must be dismissed with prejudice.

18

19  **E. SUMMARY**

20      Petitioner's Grounds 1 (Confrontation), 2 (Counsel), 3 (Disclosure) and the duplicate

21  portion of Ground 4 (Due Process) founded upon the facts underlying Ground 3, are without

22  merit and should be denied.  The remainder of Ground 4 is procedurally defaulted and must

23  be dismissed with prejudice.

24

25                          **IV.  RECOMMENDATION**

26      **IT IS THEREFORE RECOMMENDED** that the portions of Ground 4 (Due

27  Process) of Petitioner's Petition for Writ of Habeas Corpus, filed October 26, 2006 (#1),

28  founded upon denials of rights of confrontation and counsel, be **DISMISSED WITH**

1    **PREJUDICE**.

2         **IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for

3    Writ of Habeas Corpus, filed October 26, 2006 (#1), be **DENIED**.

4

5                    **V. EFFECT OF RECOMMENDATION**

6         This recommendation is not an order that is immediately appealable to the Ninth

7    Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

8    *Appellate Procedure*, should not be filed until entry of the district court's judgment.

9         However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

10   have ten (10) days from the date of service of a copy of this recommendation within which

11   to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing

12   Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file

13   a response to the objections.   Failure to timely file objections to any factual or legal

14   determinations of the Magistrate Judge will be considered a waiver of a party's right to *de*

15   *novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

16   Cir. 2003)(*en banc*).

17

18   DATED: July 15, 2008          _____

19                                          JAY R. IRWIN
                                    United States Magistrate Judge

20

21

22

23

24

25

26

27

28